UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Leslie M. B., | Case No. 22-cv-1898 (TNL) |
|       Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi,<br>Acting Commissioner of Social Security, | |
|       Defendant. | |

---

Karl E. Osterhout, Osterhout Disability Law, LLC, 521 Cedar Way, Suite 200, Oakmont, PA 15139; and Edward C. Olson, Reitan Law Office, 80 South Eighth Street, Suite 900, Minneapolis, MN 55402 (for Plaintiff); and

James D. Sides and Tracey Chainani, Social Security Administration, Office of Program Litigation, 6401 Security Boulevard, Baltimore, MD 21235; and Ana H. Voss, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Defendant).

---

## I. INTRODUCTION

Plaintiff Leslie M. B. brings the present case, contesting Defendant Commissioner of Social Security's denial of disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and D. Minn. LR 72.1(c).

This matter is before the undersigned United States Magistrate Judge on cross motions for summary judgment, Plaintiff's Motion for Summary Judgment, ECF No. 12, and the Commissioner's Motion for Summary Judgment, ECF No. 17. Based upon the

1

record, memoranda, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**, and the Commissioner's Motion for Summary Judgment, ECF No. 17, is **GRANTED**.

## II. PROCEDURAL HISTORY

On November 19, 2020, Plaintiff filed an application for DIB. Tr. 10, 221-29. Plaintiff alleged that she has been disabled since January 8, 2020. Tr. 10. Plaintiff's application was denied initially and again upon reconsideration. Tr. 10, 100-146.

Plaintiff appealed the reconsideration of her DIB determination by requesting a hearing before an administrative law judge ("ALJ"). Tr. 10, 147-48. The ALJ held a hearing in September 2021, and later issued an unfavorable decision. Tr. 7-29, 33-65.

The ALJ found that Plaintiff had the following severe impairments: bipolar disorder; borderline personality disorder; major depressive disorder; generalized anxiety disorder; post-traumatic stress disorder with dissociative symptoms; and conversion disorder.[1] Tr. 12. The ALJ further found that none of these impairments, individually or in combination, met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app.1. Tr. 14-16. The ALJ then found that Plaintiff had the residual functional capacity to work with the following nonexertional limitations:

> [She] can perform simple, routine and repetitive tasks, but not at a production rate pace (so, for example, no assembly line work); and can respond appropriately to occasional interaction with supervisors, co-workers, and the general public. [She]

---

[1] The ALJ also found that Plaintiff had severe physical impairments, including degenerative disc disease of the cervical and lumbar spine, mild intermittent asthma, and obesity. Tr. 12. However, Plaintiff's challenge to the ALJ's decision concerns only Plaintiff's mental impairments. *See* Pl.'s Mem. in Supp. at 6 n.6, ECF No. 13 ("Plaintiff's argument relates to the ALJ's mental [residual functional capacity] finding so this section focuses on opinions relating to mental impairments."). Accordingly, the Court discusses only Plaintiff's mental impairments in this Order.

2

>can tolerate few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work environment.

Tr. 16.

The ALJ found that Plaintiff was unable to perform her past relevant work as a general clerk, stock clerk, and fast-food worker. Tr. 22. However, the ALJ found that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Tr. 23. Specifically, based on Plaintiff's age, education, work experience, residual functional capacity, and the testimony of the vocational expert, the ALJ found that Plaintiff could perform the representative occupations of inspector/hand packager, office helper, and cashier. Tr. 23. Accordingly, the ALJ concluded that Plaintiff was not under disability. Tr. 23-24.

After receiving the unfavorable decision from the ALJ, Plaintiff requested review from the Appeals Council, which was denied. Tr. 1-6, 218-20. Plaintiff then filed the instant action, challenging the ALJ's decision. Compl., ECF No. 1. The parties have filed cross motions for summary judgment. ECF Nos. 12, 17. This matter is now fully briefed and ready for a determination on the papers.

### III. ANALYSIS

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. § 404.315. An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous

3

period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord* 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *accord* 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted); *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676.

Here, Plaintiff challenges the ALJ's finding that the medical opinions of Dr. Miller and CNP Viland are unpersuasive. She argues that the ALJ's finding "is not based on a reasonable or logical interpretation of the record." Pl.'s Mem. in Supp. at 6, ECF No. 13. Specifically, Plaintiff contends that the ALJ erred by (1) "improperly failing to classify Dr. Miller's opinion as a 'medical opinion' under the regulations," and (2) "relying on highly selective references to the underlying record to reject CNP Viland's opinion." *Id*.

**A. Dr. Miller's Opinion**

In September 2021, Jessica Miller, Psy.D., conducted a preliminary neurocognitive evaluation of Plaintiff. Tr. 1832-52. Dr. Miller noted that the purpose of the evaluation was "to assess [Plaintiff's] cognitive, emotional and behavioral, interpersonal, and

personality functioning in order to provide diagnostic clarification and recommendations for future treatment." Tr. 1832. Dr. Miller further noted that she was informed that the evaluation would "also be used as part of a disability services hearing." Tr. 1832.

In the 20-page evaluation, Dr. Miller discussed Plaintiff's current symptoms; developmental history; family history; trauma history; educational and social history; occupational history; medical history; mental health/psychological/psychiatric history; medications; substance use history; legal history; and Plaintiff's strengths, mental status, and behavior. Tr. 1833-37. Dr. Miller also described the Plaintiff's psychological testing results on a cognitive assessment, executive functioning assessment, adaptive functioning assessment, and emotional and behavioral functioning assessment. Tr. 1837-46.

With respect to Plaintiff's cognitive abilities, Dr. Miller noted that Plaintiff's general intellectual abilities were in the average range. Tr. 1846. She noted that Plaintiff's greatest personal cognitive strength was her ability to reason with verbal information, which was in the average range, as was her ability to process information efficiently and correctly, and her perceptual and fluid reasoning, spatial processing, visual-motor integration, and nonverbal reasoning skills. Tr. 1846. Dr. Miller wrote that Plaintiff's ability to retain information temporarily in memory; perform some mental operation on, or manipulation of, it; and produce a result with it was in the low range. Tr. 1846. Dr. Miller found that Plaintiff performed better on executive functioning tasks as they progressed indicated that she may benefit from repeated exposure to stimuli and/or practice effects. Tr. 1846-47. As a result, Dr. Miller concluded that Plaintiff "may benefit from repeated

exposure in highly structured environments without time constraints when learning new skills." Tr. 1847.

As for Plaintiff's functional emotional and behavioral abilities, Dr. Miller noted that Plaintiff endorsed experiencing clinically significant symptoms of dissociation, depersonalization, and derealization in her daily life. Tr. 1847. Dr. Miller noted that these symptoms "may contribute to impairments in [Plaintiff's] concentration, attention, emotional and behavioral dysregulation, and memory which may impede [Plaintiff's] abilities to communicate with others effectively, complete the activities required for daily living, and engage in reciprocal social interactions with others." Tr. 1847.

In considering Dr. Miller's evaluation, the ALJ noted that Dr. Miller "did not provide a function-by-function analysis of [Plaintiff's] abilities in vocationally relevant terms" and failed to provide concrete opinions regarding Plaintiff's abilities. Tr. 22. The ALJ therefore "considered the objective findings" from Dr. Miller's evaluation in crafting the residual functional capacity but did "not find [her] opinion persuasive overall." Tr. 22.

Plaintiff contends that the ALJ erred by concluding that Dr. Miller's evaluation is not a medical opinion under the Social Security regulations. Plaintiff argues that Dr. Miller "plainly offered functional limitations" in her evaluation, including that Plaintiff would benefit from repeated exposure in highly structured environments without time constraints when learning new skills, and that her symptoms contribute to impairments in concentration, attention, emotional and behavioral dysregulation, and memory, which impede her abilities to communicate effectively with others, complete activities required for daily living, and engage in reciprocal social interactions. Pl.'s Mem. in Supp. at 14.

7

Plaintiff contends that the ALJ's failure to analyze Dr. Miller's limitations constitutes error that can only be addressed by remanding the case for further proceedings. *Id*.

Under the regulations, a medical opinion is

> a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in . . . [y]our ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting.

20 C.F.R. § 404.1513(a)(2). "The touchstone is whether the statement opines about how the [c]laimant functions, rather than simply stating diagnosis, prognosis, or listing symptoms." *Cassandra O. v. Kijakazi*, No. 22-cv-1587 (ECT/DTS), 2023 WL 3855306, at *4 (D. Minn. Apr. 11, 2023), *report and recommendation accepted*, 2023 WL 3558155 (D. Minn. May 18, 2023); *see also Jared G. v. Kijakazi*, No. 21-cv-1834 (JRT/JFD), 2022 WL 4396474, at *3 (D. Minn. Sept. 23, 2022) ("[T]he central component of a medical opinion under the new regulations is what a claimant can do.").

The Court finds that the ALJ did not err by concluding that Dr. Miller's evaluation is not a medical opinion. The evaluation does list several—albeit potential—impairment-related limitations. *See* Tr. 1847 (noting that Plaintiff's symptoms "*may* contribute to impairments in [Plaintiff's] concentration, attentional, emotional and behavioral dysregulation, and memory which may impede [Plaintiff's] abilities to communicate with others effectively, complete the activities required for daily living, and engage in reciprocal social interactions with others." (emphasis added)). The evaluation does not, however,

address what Plaintiff "*can still do despite [those] impairments.*" *See Cassandra O.*, 2023 WL 3855306, at *4 ("While the form lists limitations that are presumably related to [the plaintiff's] impairment ('difficulty w/attention, focus, memory, distress tolerance'), a statement must address both functioning ('what you can do') *and* impairment-related limitations in job-related functioning to be considered a 'medical opinion.'") (citing 20 C.F.R. § 404.1513(a)(2)); *see also Jared R. G. v. Kijakazi*, No. 21-cv-1834 (JRT/JFD), 2022 WL 5119112, at *5 (D. Minn. June 2, 2022) ("And, while Dr. Beaver stated that Plaintiff had significant issues with fatigue, anxiety, and irritability, Dr. Beaver did not describe what Plaintiff could still do despite these impairments . . . ."), *report and recommendation adopted*, 2022 WL 4396474 (D. Minn. Sept. 23, 2022). Dr. Miller did not specify how Plaintiff's limitations would affect her work. *See Cassandra O.*, 2023 WL 3855306, at *4 (citing *Roy o/b/o Helton v. Comm'r of Soc. Sec.*, No. 22-5036, 2022 WL 17726702, at *3 (10th Cir. Dec. 16, 2022) (finding a doctor's statement that did not "address what [claimant] could still do despite her essential tremor" was not a medical opinion)). For that reason, the ALJ did not err by failing to treat Dr. Miller's evaluation as a medical opinion.

Even assuming the ALJ erred by rejecting Dr. Miller's evaluation as a medical opinion, any error was harmless. *See Lucas v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) ("An error is harmless when the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred."). As the Commissioner points out, the ALJ considered Dr. Miller's evaluation in crafting her residual functional capacity. *See* Comm'r's Mem. in Supp. at 8, ECF No. 18; *see also* Tr. 22 (the ALJ writing

9

that although she did not find Dr. Miller's opinion persuasive, she nonetheless "considered the objective findings obtained by Dr. Miller in [the] evaluation in crafting the residual functional capacity"). Indeed, the ALJ addressed Dr. Miller's evaluation at length in her residual functional capacity analysis. For example, the ALJ noted that during Dr. Miller's evaluation, Plaintiff "was cooperative and polite, appeared actively engaged, and put forth good effort." Tr. 19-20. Plaintiff "used appropriate speech, but appeared to have a blunted or constricted affect throughout most of the evaluation process, with moments of brightening when discussing areas of interest." Tr. 19. Additionally, the ALJ noted that Plaintiff "was able to initiate and maintain reciprocal conversation, but she appeared dissociative at times while discussing trauma history and often used distractions to assist with self-regulation when discussing triggers." Tr. 19. The ALJ further noted Plaintiff's "low energy and depressed mood" during her evaluation with Dr. Miller, but also recognized that Plaintiff "appeared to have logical and lineal thought processes." Tr. 19. The ALJ then discussed Plaintiff's reports of delusions, hallucinations, and previous suicidal ideations/self-harm behaviors. Tr. 19. Further, the ALJ described Plaintiff's results on psychological testing, which revealed an average intelligence but also anxiety and variabilities in sustained concentration, depersonalization, PTSD, and severe psychopathology symptoms. Tr. 20. Lastly, the ALJ noted that Dr. Miller concluded that Plaintiff "might benefit from repeated exposure to highly structured environments without time restraints when learning new skills and that her dissociation symptoms may contribute to impairments in concentration, attention, emotional/behavioral regulation, memory, and ability to interact with others." Tr. 20.

The ALJ did ultimately limit Plaintiff to only "simple, routine and repetitive tasks but not at a production rate pace (so, for example, no assembly line work)" as well as only "occasional interaction with supervisors, co-workers, and the general public." Tr. 16. The ALJ further found that Plaintiff can tolerate only few changes in the work setting and limited Plaintiff to "routine job duties that remain static and are performed in a stable, predictable work environment." Tr. 16. Thus, even if the ALJ should have evaluated Dr. Miller's evaluation as a medical opinion, and even if she would have found it fully persuasive, it would not have made a substantial difference to Plaintiff's residual functional capacity. Plaintiff has not shown how Dr. Miller's evaluation warrants additional limitations. *See Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) ("As the claimant, [Plaintiff] bears the burden of proof to establish her [residual functional capacity]."). Accordingly, the Court finds no error with respect to how the ALJ considered Dr. Miller's evaluation.

### B. CNP Viland's Opinion

Plaintiff also challenges the ALJ's analysis of Plaintiff's treating provider, Jenna Viland, CNP's, opinion. In March 2021, Viland completed a mental medical source statement. Tr. 1527-31. Viland wrote that Plaintiff is diagnosed with bipolar affective disorder, dissociative disorder, borderline personality disorder, and PTSD, and her prognosis is "fair." Tr. 1527. Viland noted that Plaintiff works with psychiatry and intensive outpatient psychology for treatment. Tr. 1527. Viland wrote that in January 2021, Plaintiff's mental health was "very much uncontrolled," as Plaintiff was experiencing frequent dissociation, fatigue, weakness, and difficulty concentrating. Tr.

11

1527.  Viland indicated that Plaintiff's limitations would produce "good" and "bad" days, and that Plaintiff has a minimal capacity to adapt to changes in the environment or demands that are not already part of her daily life.  Tr. 1529.  Viland also noted that Plaintiff's chronic back pain also contributes to her mental health limitations.  Tr. 1527.

Viland opined that Plaintiff has no limitations or a mild limitation in her ability to understand and remember very short and simple instructions, carry out very short and simple instructions, and ask simple questions or request assistance.  Tr. 1528.  She opined that Plaintiff has a moderate limitation in her ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, and make simple work-related decisions.  Tr. 1528.  Viland further opined that Plaintiff has a marked limitation in her ability to maintain attention and concentration for more than two-hour segments, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with, or proximity to, others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, maintain socially-appropriate behavior and adhere to basic standards of neatness and cleanliness, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, set realistic goals or make plans independently of others, and tolerate normal levels of stress.  Tr. 1528.  Finally, Viland opined that Plaintiff has an extreme limitation in her ability to complete a normal work day and work week, without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of

12

rest periods, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and travel in unfamiliar places or use public transportation. Tr. 1528.

The ALJ concluded that Viland's opinion was not persuasive. Tr. 21. The ALJ found that while Viland had a treating relationship with Plaintiff, her opinion was "not consistent with the evidence as a whole, which shows that [Plaintiff] has more often than not had normal or unremarkable findings during mental status examinations. Tr. 21. The ALJ cited a number of medical records of mental status examinations documenting normal or unremarkable findings. Tr. 21 (citing Exs. B4F/8; B5F/22, 35, 60; B6F/9, 17; B7F/26, 51; B8F/72; B12F/24; B25F/5, 42).

Plaintiff argues that the ALJ "rel[ied] on highly selective references to the underlying record to reject [] Viland's opinion." Pl.'s Mem. in Supp. at 13. According to Plaintiff, the medical evidence "belies the ALJ's assertions" that Plaintiff had normal or unremarkable findings during mental status examinations. *Id*. at 15. Plaintiff also argues that the records the ALJ cited, showing "normal" examinations, do not support the ALJ's finding. *Id*.

The Court concludes that the ALJ did not err in her analysis of Viland's opinion. The ALJ "may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (citations omitted). Here, the ALJ cited other, substantial evidence in the record that was inconsistent with Viland's opinion, including normal or unremarkable mental status examinations. *See, e.g.*, Tr. 525 (noting Plaintiff was well-groomed; appropriately dressed; had no abnormal psychomotor

13

movements; had appropriate eye contact; had appropriate affect; had a neutral/anxious mood; had a logical and goal-oriented thought process; had no delusions, hallucinations, or obsessions; had intact attention, concentration, and memory; and had good insight, intact judgment, and a positive attitude); Tr. 611 (noting Plaintiff had good grooming and hygiene; was in no acute distress; was cooperative; had appropriate eye contact; was alert and oriented to person, place, and time; had no impairment to recent and remote memory; had normal speech rate, rhythm, tone, and response; had normal attention and concentration; had organized thought process; was based in reality and devoid of paranoia, delusions, or hallucinations; was not responding to internal stimuli; had average intelligence and good judgment; and had the ability to complete daily tasks like laundry and dishes); Tr. 710 (noting Plaintiff was cooperative and engaged; had a depressed mood and subdued affect; had normal speech; had a goal-orientated thought process; had adequate judgment and insight; was alert and fully oriented; and had intact memory, adequate attention and concentration, and average knowledge); Tr. 718 (noting Plaintiff was cooperative and engaged; had depressed mood and subdued affect; had normal speech; had a goal-oriented thought process; had adequate judgment and insight; was alert and fully oriented; and had intact memory, adequate attention and concentration, and average knowledge); Tr. 747 (noting Plaintiff had a cooperative attitude; made good eye contact; had a sad and depressed mood and flat affect; had clear and coherent speech; had a logical and linear thought process with no loose associations; demonstrated no evidence of psychotic thought; had good insight and intact judgment; was oriented to time, person, and place; and had intact attention span and concentration and appropriate knowledge); Tr. 772

14

(noting Plaintiff was awake, alert, and adequately groomed; made good eye contact; had clear and coherent speech; was "still sad" but had an improved mood; had a cooperative attitude; had a logical and goal-oriented thought process with no loose associations; had good insight and intact judgment; was oriented to time, person, and place; and had intact attention span and concentration, intact memory, and appropriate knowledge); Tr. 994 (noting Plaintiff was alert, made good eye contact, and was well-appearing; had a pleasant mood and appropriate affect; and had good judgment and insight and intact memory); Tr. 1288 (noting Plaintiff was awake, alert, made good eye contact, and adequately groomed; had a cooperative attitude and improved mood; had appropriate and normal affect; had clear and coherent speech; had a goal-oriented thought process with no loose associations; demonstrated fair insight and judgment; was oriented to time, person, and place; and had intact attention span and concentration and intact memory); Tr. 1639 (noting Plaintiff was cooperative and engaged; had a depressed mood and subdued affect; had normal speech; had a goal-directed thought process with tight associations; had adequate judgment and insight; was alert and fully-oriented with intact memory; had adequate attention and concentration and average knowledge; and demonstrated no paranoia or delusions); Tr. 1676-77 (noting Plaintiff was cooperative and engaged; had a depressed mood and subdued affect; had coherent and normal speech; had a goal-direct thought process with tight associations; had adequate judgment and insight; was alert and fully oriented with intact memory; had adequate attention and concentration and average knowledge; and demonstrated no paranoia or delusions). Contrary to Plaintiff's argument, these records (which the ALJ relied upon to reject Viland's opinion) *do* support the ALJ's conclusion

15

that Plaintiff has more often than not had normal or unremarkable findings during mental status examinations. Thus, because the ALJ supported her findings with substantial evidence in the record, the ALJ was not required to adopt Viland's opinion. *See Seth K. v. Kijakazi*, No. 21-cv-76 (MJD/LIB), 2022 WL 3718601, at *5 (D. Minn. July 27, 2022) ("[T]he ALJ is not required to believe the opinion of a treating physician when, on balance, the medical evidence convinces her otherwise."), *report and recommendation adopted*, 2022 WL 3717043 (D. Minn. Aug. 29, 2022). In sum, the ALJ gave "good reasons," supported by substantial evidence in the record, to explain why Viland's opinion was not persuasive. *See Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). Accordingly, the ALJ did not err in rejecting her opinion.

Plaintiff also argues that the ALJ failed to consider the fact that Plaintiff had seven psychiatric hospitalizations in a 6-month period and an inability to remain stabilized in a highly supportive residential treatment center. Pl.'s Mem. in Supp. at 15. But the ALJ *did* acknowledge that Plaintiff received inpatient treatment for suicide attempts and paranoia. The ALJ explained at least three times that Plaintiff received inpatient treatment for suicide attempts and paranoia. Tr. 16, 17, 19. The ALJ further explained that Plaintiff "was admitted for voluntary inpatient treatment on several occasions in 2020 for psychosis, anxiety, panic attacks, depressive symptoms, and suicidal ideations/attempts." Tr. 19. The ALJ recognized that "[d]uring these treatment encounters, records indicate that [Plaintiff] presented making delusional statements and exhibiting bizarre behavior" at times and admitted to engaging in self-harm behaviors. Tr. 19. The ALJ also explained, however, that Plaintiff was not held involuntarily because Plaintiff's condition did not meet the

16

criteria for an involuntary hold. Tr. 19. Again, contrary to Plaintiff's argument, the ALJ did not gloss over the fact that Plaintiff was hospitalized and received treatment at a residential mental health facility.

Moreover, it is not the role of the Court to reweigh the evidence presented to the ALJ. *See Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022) ("Despite [the claimant's] dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence."). "While it is not surprising that, in an administrative record which exceeds 1,500 pages, [Plaintiff] can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's [residual functional capacity] determination and the decision to discount [Viland's] opinion." *See Fentress*, 854 F.3d at 1021 (citing *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016)). The Court will not reverse the ALJ's decision "simply because [it] would have reached a different conclusion than the Commissioner or because substantial evidence supports a contrary conclusion." *Id*. (citations omitted); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision."). Here, the ALJ's determination is supported by good reasons and substantial evidence, and the Court therefore finds that the ALJ did not err in assessing Viland's opinion.

In sum, based on the Court's review of the record as a whole, the Court finds that the ALJ's decision that Plaintiff was not disabled is supported by substantial evidence in

the record. Because there is substantial evidence to support the ALJ's decision, the Court may not reverse the decision merely because substantial evidence may exist which would have supported a different outcome, or because the court could have decided the case differently.

## IV. ORDER

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

2. The Commissioner's Motion for Summary Judgment, ECF No. 17, is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Date: September  1 , 2023                     *s/ Tony N. Leung*
                                              Tony N. Leung
                                              United States Magistrate Judge
                                              District of Minnesota

                                              *Leslie M. B. v. Kijakazi*
                                              Case No. 22-cv-1898 (TNL)